IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

SHERRY CLARK, )
)
        Plaintiff, )  TC-MD 160101R
)
  v. )
)
WASHINGTON COUNTY ASSESSOR, )
)
        Defendant. )  **FINAL DECISION**[1]

Plaintiff appeals the real market value of property identified as Account R2045572

(subject property) for the 2015-16 tax year.  On August 22, 2016, a trial was held in the Oregon

Tax Court in Salem, Oregon.  Plaintiff, Sherry Clark (Clark) appeared and testified on her own

behalf.  Adrian Wilkes appeared on behalf of Defendant.  Richard Darst Thompson (Thompson)

testified on behalf of Defendant.  Plaintiff's Exhibits 1, 7, 8 and 17 through 35 were received

without objection.  Plaintiff's Exhibits 2 through 6, and 9 through 16 were received over

Defendant's objection.  Defendant's Exhibit A was received without objection.

I.  STATEMENT OF FACTS

A.    *Description of the Property*

The subject property is a 1,963 square-foot, Cape Cod style, single-family home,

originally built in the 1950's, then almost completely rebuilt after a 2013 fire.  (Ptf's Ex 10.)

The home is situated on a 9,583 square foot lot in Beaverton, Oregon, in an area surrounded by

larger and newer homes.  (*Id.*)  The home has three bedrooms, two bathrooms, a rear deck area,

an attic room, and a one vehicle carport.  (*See e.g.* Ptf's Exs 5, 24, 25, and 29-31.)

---

[1] This Final Decision incorporates without change the court's Decision, entered February 22, 2017.  The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered.  *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

B.    *The Roll Value and Parties' Value Requests*

Defendant reduced the real market value for the subject property after the 2013 fire pursuant to ORS 308.425. (Ptf's Ex 1.) Defendant increased the real market value for the 2015-16 year, after the subject property was rebuilt, to $346,950. (*Id.*); *See* ORS 308.425(4). Plaintiff appealed that value to the county board of property tax appeals (Board), and the Board reduced the real market value to $337,000. (Ptf's Ex 2.) Plaintiff appealed the Board's value to this court, requesting a reduction to $305,000. (Ptf's Ex 17.) Defendant requests that the court reduce the real market value of the subject property to $330,000. (Def's Ex A at 2.)

C.    *Plaintiff's Evidence*

Clark testified that she purchased the subject property as a bank-owned foreclosed property in 2011 for $178,500. In 2013, a fire destroyed most of the home. Clark testified the house was "torn down to the studs," requiring the replacement of all siding, windows, sheet rock, cabinets, flooring, lighting, fixtures, plumbing, and electrical wiring. Clark's insurance company paid to rebuild the home at a cost of $279,000. Clark also paid unspecified amounts for the following: upgraded deck, upgrade to quartz countertops in the kitchen and bathroom, and a replaced water main-line that had burst. Clark testified that her insurance company did not allow her to tear down the entire framing and start over, so the house retained its entire 1950's "outdated" configuration, except that a "bump out" was added to the attic to conform to current building codes. The house was not retrofitted for earthquakes.

Plaintiff submitted and relied upon an appraisal report prepared by Nathan Bernhardt (Bernhardt), an Oregon Certified Residential Appraiser, who did not testify. Bernhardt estimated the real market value of the subject property was $305,000 as of January 1, 2015. (Ptf's Ex 8-16.) Bernhardt's value estimate was based solely on the sales comparison approach, explaining

"buyers, sellers, and real estate professionals typically prefer the sales comparison approach, far and above, the other two approaches, for properties like the subject [property]." (Ptf's Ex 11.)

Bernhardt considered four homes within 3.1 miles[2] of the subject property sold between January 30, 2014 and December 20, 2014, and one home which had a sale pending as of the report date of December 30, 2015. *Id.* The unadjusted sale prices of the four comparable sales ranged from a low of $260,000 to a high of $311,000. (Ptf's Ex 10, 13.) The report notes that "subject street is a residential feeder with slightly higher traffic than typical residential streets." (Ptf's Ex 10.) The report also notes that "surrounding homes are larger, newer homes in good condition." *Id.* Bernhard's report rated the subject property as "good/remod" and the actual age as 65 years old.

Bernhardt's report includes two comparable properties (#1 and #2) also used in Defendant's report (#2 and #3). (Ptf's Ex 10; Def's Ex A at 11.) The report adjusted the sales price for the sale date, location, lot size, gross living area, and whether the home had a garage or carport. For comparable #1, Bernhardt's report adjusted $14,000 for the date of sale, $1,250 for the site[3], $21,660 for the gross living area, subtracted $12,000 for a two-car garage, and arrived at an adjusted price of $284,910. Bernhard's report on comparable #2, adjusted the price by $2,800 for the sale date, $20,000 for the location, $1,750 for the site, $24,180 for the gross living area, subtracted $6,000 for a one-car garage, and arrived at an adjusted sales price of $321,730.

Clark testified that she felt the properties selected by the Defendant in its appraisal were too new and did not reflect the outdated floor plan of the subject property. She testified that the

---

[2] The summary section incorrectly states the comparables were "within one mile and have sold within one year of the subject's Jan 2015 assessment date." (Ptf's Ex 10.) *See* the section labeled "Proximity to Subject," (Id.) and comparable #5 which was not verified as sold by the report date. (Ptf's Ex 13.)

[3] The adjustment appears to be an error because the comparable was actually larger than the subject property.

insurance company did not allow her to retrofit for earthquake safety, which in her opinion negatively impacts its value to potential buyers. Lastly, she testified that did not believe the cost approach was a good method to estimate the value of the subject property.

D.    *Defendant's Evidence*

Defendant submitted an appraisal report prepared by Thompson. Thompson testified that he has 12 years' experience as a registered property appraiser. Thompson estimated the real market value of the subject property, using the sales comparison approach, at $330,000. (Def's Ex A at 2.) Thompson testified the subject property's neighborhood contains mostly newer homes from the mid-1990s to around 2005 with a few older infill homes. The newer homes are larger and of higher quality, but would not be considered "high-end" homes. Homes in the surrounding neighborhood ranged from the low-end of $260,000 to a high-end of almost $600,000. Thompson testified that the subject property is on the lower end for the neighborhood, but, because of the nicer homes in the area, the value of the subject property is increased due to "progression."[4]

Thompson selected four properties with sales occurring between January 30, 2014 and January 25, 2015. (Def's Ex A at 11-12.) Those comparables sold for prices ranging from $260,000 to $329,000. *Id*. Thompson made adjustments for a variety of differences to the subject property that he deemed relevant for estimating its value. Those adjustments included: date of sale, location, size, traffic, physical condition, number of rooms/bathrooms, and whether the property included a garage or carport. He also provided pictures of the subject property and the comparables. (Def's Ex A at 8-10, 14-20.)

/ / /

---

[4] Defendant cites to Appraisal Institute, *The Appraisal of Real Estate*, Chapter 3, page 42 (13th ed 2009).

Thompson did not adjust for the 1950's layout of the subject property, but did adjust for the attic area because the ceiling height was lower than new construction. He testified that Plaintiff's concern about lack of earthquake retrofitting was, in his experience, not an issue for buyers and would not impact its real market value. Thompson testified that a City of Beaverton 2014 traffic survey shows a traffic count for the road upon which the subject property sits is 1,614 cars per day. He testified that it is a little high for a 25-mph residential street, but not so much as to require an adjustment for traffic.

Thompson testified that he selected properties further from the subject property than Plaintiff's appraiser because there were no 1950's homes with a significant remodel in the immediate area. Thompson's comparable #1 is an example of going away from the subject in order to find a home similar in age and neighborhood. This comparable was not used by Plaintiff's appraiser. Thompson found this property slightly inferior to the subject property because fewer repairs had been performed. The sales price for comparable #1 was $329,000, for which Thompson adjusted for the sale date, physical condition, gross living area, lack of attic and it having a two car garage, before arriving at an adjusted sale price of $331,500. Thompson testified that both appraisers (he and Plaintiff's appraiser) used his comparable #2. Thompson determined the adjusted sales price was $329,800, whereas Plaintiff's appraisal found it was $284,910. Thompson testified that the primary differences were his adjustments for the property being on a busy street with speed bumps, and his adjustment because the remodel of the comparable appeared to be from the 1970s. That comparable also had vinyl siding which is inferior to the Hardie Plank siding on the subject property. Thompson testified that compariable #3 was also used in both appraisals, and represented the most divergent of the adjustments. Thompson adjusted this property for an inferior location because it was "influenced" by a busy

street and because part of the infill is apartments. Thompson also compared two years of sales in each neighborhood and found that they were consistently lower in the area surrounding comparable #3.

Thompson testified that Plaintiff's appraisal report contained deficiencies such as multiple math and adjustment errors, and failed to make adequate adjustments for location. Thompson did not consider Plaintiff's comparable #5 because it was on the market for a very long time; the house was bought as a fixer and was being flipped; and because it was not a closed sale at the time Plaintiff's report was made. Thompson also criticized Plaintiff's report for not considering the cost approach, which is required by the appraisal guide and is also important for newly remodeled properties.

Thompson testified that he performed a cost approach because the subject property was almost new after the remodel. He suggested that the cost approach in this case serves as a check against his market sales analysis. Thompson used the Marshall & Shift cost guidelines and reviewed approximately 25 land sales. He found land sales had a low of $110,000 and a high of $260,000. Thompson opined the site was worth $160,000 and the total value under the cost approach was $332,000.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2015-16 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1),[5] which states:

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

"Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2015-16 tax year is January 1, 2015. ORS 308.007; ORS 308.210. The real market value of Property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches to value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308-0240(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id*. Here, both parties relied on the sales comparison approach, although Defendant also performed a cost approach analysis and considered, but rejected, the income approach.

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor*, TC-MD 060354D, WL 1068455 at *3 (Or Tax M Div Apr 3, 2007) (citations omitted). "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the Property. *Richardson*, WL 21263620 at *3.

"In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition."

OAR 150-308-0240(2)(c).

Plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of

evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

"[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Miller v. Dept. of Rev.*, 327 Or 129, 958 P2d 833 (1998), (citing *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990)).

Plaintiff relied upon an appraisal report prepared by Bernhardt. The court has a number of concerns with the report. There are several mathematical errors and adjustments which were made in the wrong direction. The report uses a "comparable" property (#5) which was not a confirmed sale at the time of the appraisal report. Plaintiff's appraisal contains no pictures of the other comparable properties making the selection and evaluation of comparables less helpful. Most importantly, Bernhardt did not testify at trial to explain his adjustments. Why for example, did Bernhardt make no location or physical condition adjustments for Plaintiff's comparable #1, while Defendant's appraisal (Defendant's comparable #2) adjusted the location by $26,000 due to traffic and another $26,000 due to its physical condition?

Thompson was able to provide testimony about the adjustments. Thompson explained that the condition adjustment was done because that comparable was remodeled in the 1970s while the subject property was almost completely rebuilt after 2013. Thompson explained that the traffic adjustments were based on his own observations and a traffic report prepared by the city of Beaverton. The justifications for the specific adjustments are crucial in this case because Plaintiff's appraisal is less than 7.5 percent below Defendant's value for the subject property. The court is unable to ascertain whether the comparables selected and adjustments made by Bernhardt were more accurate than those of Thompson.

As a secondary matter, Bernhardt's failure to analyze the value of the subject property under the cost approach detracts from the appraisal. OAR 150-308-0240(2)(c) requires that the cost approach be considered. While parties and the court often pay less attention to the cost approach for non-commercial residential properties, when properties are recently and mostly completely rebuilt, the cost approach can serve an important check to the market sales approach. In this case, the cost approach as calculated by Defendant is almost an exact match to the market approach. Plaintiff acknowledges that the cost to rebuild the subject property after the 2013 fire was $279,000, and that figure did not include some additional work and upgrades. Given Defendant's evidence that the lowest recent land sale in the area was $110,000, the court finds it hard to accept Plaintiff's contention that the land and house value of the subject property is only $305,000.

Finally, there is Clark's own testimony and other exhibits relating to value. Clark argued that the outdated configuration and lack of earthquake retrofitting is evidence supporting a lower valuation. It appears to the court that design, quality of construction, and physical conditions were already considered in both appraisals. Clark's testimony provided no quantitative differential evidence about these issues for the court to make further adjustments. Clark also offered photographs and property tax information to challenge a previous appraisal submitted by Defendant at the Board hearing. That appraisal was not submitted by Defendant at the trial, and the court does not find helpful an evaluation or argument about the properties selected for review in that appraisal.

The burden of proof requires that the party seeking relief (Plaintiff in this case) provide evidence to support their argument. In this case Plaintiff's evidence is unpersuasive. Plaintiff has failed to meet the requisite burden of proof. Even though the burden has not shifted, "the

court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Here, Defendant requested that the court reduce the value determined by the Board from $337,000 to $330,000. Thus, the court will address Defendant's value evidence.

Defendant submitted an appraisal report that evaluated the subject property by the cost and sales comparison approaches. Thompson provided testimony which supported and explained why he chose comparable properties and the basis for his adjustments. Thompson explained why he selected properties further away from the subject so he could capture the qualities of properties which were older but had significant recent remodeling work done. He also adequately explained the adjustments due to traffic conditions which were supported by city traffic count data. The cost approach analysis closely matched and supported the value as found using the sale comparison approach. Overall, the court is satisfied that the value as determined by Mr. Thompson, $330,000, represents the real market value for the subject property as of January 1, 2015.

III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiff failed to carry her burden of proof. Defendant's evidence of value was persuasive and supports a 2015-16 real market value of $330,000 for account R2045572. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that the real market value of property identified as account R2045572 for the 2015-16 tax year is $330,000.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by* <u>*mailing*</u> *to: 1163 State Street, Salem, OR 97301-2563; or by* <u>*hand delivery*</u> *to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within* <u>*60*</u> *days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on March 16, 2017.*